# In the United States Court of Federal Claims

No. 15-1163

Filed: September 11, 2018

*******************************************

| | |
|---|---|
| MALCOLM PIPES,<br><br>  Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>  Defendant. | 10 U.S.C. §§ 101(d)(7) (defining "inactive-duty training"), 1204 (Retirement for Military on Active Duty for 30 days or less or on Inactive-duty Training);<br>28 U.S.C. § 1491 (Tucker Act Jurisdiction);<br>Air Force Instruction ("AFI") 10-248 (May 26, 2004) (Fitness Program);<br>Air Force Manual 36-8001 (Jan. 22, 2004) (Reserve Personnel Participation and Training Procedures);<br>Rules of the United States Court of Federal Claims ("RCFC") 12(b)(1) (Subject Matter Jurisdiction), 12(b)(6) (Failure to State a Claim Upon Which Relief Can Be Granted), 52.1 (Judgment on the Administrative Record), 52.2 (Remanding a Case). |

*******************************************

**Matthew E. Hughes**, Tully Rinckey PLLC, Washington, D.C., Counsel for Plaintiff.

**David Alan Levitt**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION AND FINAL ORDER ON REMAND**

**BRADEN**, *Senior Judge*.

**I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.[1]**

On October 9, 2015, SSgt Pipes ("Plaintiff") filed a Complaint in the United States Court of Federal Claims alleging that he was "denied the disability retirement pay and benefits to which he is entitled under 10 U.S.C. § 1204[.]"  ECF No. 1 at 9.

---

[1] The relevant facts discussed herein were derived from the October 9, 2015 Complaint ("Compl.") and the Appendix attached to the Government's January 27, 2016 Motion To Dismiss

On May 8, 2017, the Government filed a Motion To Dismiss, pursuant to RCFC 12(b)(1) and 12(b)(6), or, in the alternative, for Judgment On The Administrative Record, pursuant to RCFC 52. ECF No. 25. On June 8, 2017, Plaintiff filed a Cross-Motion For Judgment On The Administrative Record And Response to the Government's May 8, 2017 Motion To Dismiss. ECF No. 26.

On September 29, 2017, the court issued, under seal, a Memorandum Opinion And Order denying the Government's May 8, 2017 Motion To Dismiss and the Government's May 8, 2017 Motion For Judgment On The Administrative Record, and granting Plaintiff's June 8, 2017 Cross-Motion For Judgment On The Administrative Record. *See Pipes*, 134 Fed. Cl. at 389. The September 29, 2017 Memorandum Opinion And Order also vacated a February 28, 2013 Air Force Board For Correction Of Military Records ("AFBCMR") Decision denying Plaintiff's Application For A Correction Of Military Records and remanding this case to the AFBCMR for 120 days "to reconsider Plaintiff's Application For A Correction Of Military Records in light of the new evidence presented by the parties," pursuant to RCFC 52.2(a), (b)(1)(B). *See id.* On October 13, 2017, the court issued the public version of the September 29, 2017 Memorandum Opinion And Order. *See id.*

On December 22, 2017, the parties filed a Joint Status Report notifying the court that the new evidence presented was "under consideration and review by the Air Force Reserve Command/Judge Advocate [("AFRC/JA")] and the Medical Review Board Medical Consultant [("MRBMC")], both of which are advisors to the AFBCMR." ECF No. 35 at 1. The December 22, 2017 Joint Status Report also stated that once the AFRC/JA and MRBMC "complete their reviews, they will present their findings and recommendations to the AFBCMR," that will "review the recommendations and reconsider [Plaintiff's] Application" For A Correction Of Military Records. ECF No. 35 at 1.

On January 18, 2018, the parties filed a Joint Motion For Extension Of Remand And Stay requesting a 120-day extension of the remand and stay, because "the AFRC/JA and MRBMC have not yet completed their review and have not yet forwarded their recommendations to the AFBCMR." ECF No. 36 at 1–2. On that same day, the court issued an Order granting, in part, the parties' January 18, 2018 Joint Motion. ECF No. 37. The January 18, 2018 Order extended the remand and stay to May 7, 2018, "or until AFBCMR issues the reconsideration decision." ECF No. 37 at 1. The January 18, 2018 Order also directed the parties to file a Joint Status Report "within ten days of the AFBCMR's reconsideration decision[,] or on May 7, 2018, whichever occurs first." ECF No. 37 at 1.

On February 1, 2018, the AFRC/JA issued an Advisory Opinion to the AFBCMR recommending that the AFBCMR deny Plaintiff's requested relief. ECF No. 40 at 18–21.

---

("AR i, ii, 1–251, AF Form 40A"), and are related in *Pipes v. United States*, 134 Fed. Cl. 380 (Fed. Cl. 2017).

On May 14, 2018, the parties filed a Joint Status Report notifying the court that on May 3, 2018, the AFBCMR issued a reconsideration decision ("May 3, 2018 AFBCMR Reconsideration Decision") concerning Plaintiff's Application For Correction Of Military Records.  ECF No. 38 at 1.  The May 14, 2018 Joint Status Report stated that Plaintiff believes:

> (1) that the [c]ourt has properly ruled in favor of [Plaintiff] on the Administrative Record; (2) that the Air Force has now found that [Plaintiff]'s injury (stroke) was incurred in the line of duty . . . ; (3) that the Air Force has properly found that [Plaintiff] was indeed ordered to run and engage in [Self-paced Fitness Improvement Program ("SFIP"); and (4)] that the Air Force has made a legally indefensible finding that [Plaintiff] can ignore an acknowledged order of his Commander . . . , when it has been found that orders from superiors requiring the performance of military duties are presumed to be lawful."

ECF No. 38 at 2.

In contrast, the Government stated that the May 3, 2018 AFBCMR Reconsideration Decision affords a satisfactory basis for disposition of this case.  ECF No. 38 at 2.

On June 12, 2018, the court issued an Order directing the AFBCMR to file with the Clerk of Court two copies of the May 3, 2018 AFBCMR Reconsideration Decision, pursuant to RCFC 52.2(e).  On June 22, 2018, the Government filed two copies of the May 3, 2018 AFBCMR Reconsideration Decision, including attachments thereto.  ECF No. 40.

On July 3, 2018, Plaintiff filed a Motion To Supplement The Administrative Record with "DOJ publication, *Employment Rights of the National Guard and Reserve*," because this handbook was submitted by Plaintiff to the AFBCMR on remand.  ECF No. 41 at 1.

On July 10, 2018, the Government responded that, "[b]ecause this case involves [Plaintiff's] claim for a disability retirement pension rather than a claim of discrimination[,] based on military service, the Government fails to see how the handbook . . . is relevant to [Plaintiff's] claims[.]"  ECF No. 42 at 1.  Nevertheless, the Government did not oppose Plaintiff's July 3, 2018 Motion.  ECF No. 42 at 1.  On that same day, Plaintiff filed a Notice together with the attached handbook.  ECF No. 43.  On August 3, 2018, the court issued an Order granting Plaintiff's July 3, 2018 Motion.

## II.   THE AIR FORCE BOARD FOR CORRECTION OF MILITARY RECORDS' RECONSIDERATION DECISION ON REMAND.

On May 3, 2018, the AFBCMR issued a Reconsideration Decision,[2] that "reconsider[ed] Plaintiff's] request to:

---

[2] The May 3, 2018 AFBCMR Reconsideration Decision is part of the Administrative Record.  *See* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 8306 (3d ed. 2018) ("Formal record[:] The record for review . . . includes the decision of any lower level decisionmakers.").

1. Correct [Plaintiff's] record to reflect [that Plaintiff] is permanently medically retired at 60 percent (or more) effective 4 Sep[tember] [20]06;

2. Receive back pay from the above date of retirement and [for Plaintiff] and his family [to] be reimbursed for all medical bills from the effective date of his permanent retirement; and, by amendment,

3. Be placed on active duty orders and afford him the opportunity to enter a military health facility at the Air Force's expense for further medical rehabilitative evaluation and treatment.

ECF No. 40 at 37.

The May 3, 2018 AFBCMR Reconsideration Decision found:

1. After again reviewing [Plaintiff's] reconsideration application, the court documents, and the evidence provided in support of [Plaintiff's] appeal, we remain unpersuaded [that] the evidence presented demonstrate[s] the existence of an error or injustice and agree with the previous Board's decision.  While the Board notes the Medical Advisor found it plausible that [Plaintiff's] participation in vigorous training for his fitness assessment may have contributed to the occurrence of his stroke, the Board further notes in order [for Plaintiff's] stroke to be considered in the line of duty as a traditional Reservist, it must be determined it was the proximate result of performing military service. In this regard, the Board slightly differs from the AFRC/JA opinion that [Plaintiff] was actually ordered to participate in . . . SFIP; however, the Board does agree with AFRC/JA that [Plaintiff] was never lawfully ordered to participate in SFIP while in civilian status[,] nor that [Plaintiff] was in an ["inactive-duty training"] status when he did so participate.  The Board further agrees with the AFRC/JA opinion that adherence to SFIP could only be legally mandated when [Plaintiff] was in a duty status and that SFIP training is no different than any other daily routine to maintain fitness between drilling UTAs. Continued adherence to any fitness routine while in civilian status is highly encouraged, but cannot be and is not mandated.  The Board agrees with AFRC/JA and finds the contention that all reservists should be in a duty status when they are maintaining their fitness to meet Air Force fitness standards not only overbroad, but [also] misconstrues the statute.  Therefore, the Board determines [Plaintiff's] disability processing was done in accordance with the applicable regulations and instructions at the time as [Plaintiff] was not in an official military duty status.  While the Board notes [Plaintiff's] counsel contends the [February 1, 2018] AFRC/JA [A]dvisory [Opinion] should be disregarded[,] since it referenced the wrong Air Force Instruction . . . and [United States Air Force Reserve Command ("AFRC")] Supplement, the Board reviewed the applicable AFIs and found no material difference.  Additionally[,] the Board determined [that] the AFRC supplement referenced was in effect at the time of [Plaintiff's] stroke and it clearly states member participation in a non-duty status is encouraged.  As stated above, participation in a fitness

> program could only be legally mandated when [Plaintiff] was in a duty status, and at the time of [Plaintiff's] stroke, he was not.  Therefore, in the absence of evidence to the contrary, we find no basis to recommend granting the requested relief.
>
> 2. [Plaintiff's] case is adequately documented and it has not been shown that a personal appearance with or without counsel will materially add to our understanding of the issues involved.  Therefore, the request for a hearing is not favorably considered.

ECF No. 40 at 42–43.

Therefore, the May 3, 2018 AFBCMR Reconsideration Decision ruled that "[Plaintiff] be notified [that] the evidence presented did not demonstrate the existence of material error or injustice; the application was denied without a personal appearance; and the application will only be reconsidered upon the submission of newly discovered relevant evidence not considered with this application."  ECF No. 40 at 43.

## III. DISCUSSION.[3]

### A. Standard Of Review For Judgment On The Administrative Record.

As a matter of law, the review of a military correction board's decision is "limited to the administrative record before the deciding official or officials."  *Wyatt v. United States*, 23 Cl. Ct. 314, 319 (Cl. Ct. 1991).  The standard for judgment on the administrative record, pursuant to RCFC 52.1, is whether the plaintiff has met the burden of proof to show that the decision was without a rational basis or not in accordance with the law, after considering the administrative record.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005) (instructing the court to make "factual findings under RCFC 52.1 from the [limited] record evidence as if it were conducting a trial on the record").  Where the parties have filed cross-motions for judgment on the administrative record, RCFC 52.1 provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court."  *Id.* at 1356.  Unlike summary judgment, genuine issues of material fact do not preclude a judgment on the administrative record.  *See id.* at 1355–56.

The standard of review is limited to determining whether the agency decision is "arbitrary, capricious, unsupported by substantial evidence, or contrary to law."  *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998); *see also Hoskins v. United States*, 40 Fed. Cl. 259, 271–72 (Fed. Cl. 1998) ("Once a plaintiff has sought relief from a correction board . . . the plaintiff is bound by that board's determination unless he can satisfy the difficult standard of proof that the correction board's decision was illegal[,] because it was arbitrary, capricious, or in bad faith, or unsupported

---

[3] The court's October 1, 2017 Memorandum Opinion And Order determined that: Plaintiff has standing to bring the claims alleged in the October 9, 2015 Complaint; the claims alleged in the October 9, 2015 Complaint are not barred by the statute of limitations; and the facts alleged in the October 9, 2015 Complaint state a claim on which relief can be granted.  *See Pipes*, 134 Fed. Cl. at 389, 395, 401.

by substantial evidence, or contrary to law, regulation or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, or money is due.") (citations omitted).  The court is not authorized to retry the case on the merits.  *See Chayra v. United States*, 23 Cl. Ct. 172, 178 (Cl. Ct. 1991) ("While the court might disagree with the board's decision, it cannot substitute its own judgment for that of the board if reasonable minds could reach differing resolutions of the disputed matter.").

Plaintiff bears the burden of proving any deficiency by "cogent and clearly convincing evidence." *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (internal citations omitted).  Therefore, the proffered evidence must "overcome the strong, but rebuttable, presumption that the administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Porter*, 163 F.3d at 1316 (quoting *Sanders v. United States*, 596 F.2d 804, 813 (Ct. Cl. 1979)).

> **B.   Whether The Air Force Board For Correction Of Military Records' Reconsideration Decision Was "Arbitrary, Capricious, Unsupported By Substantial Evidence, Or Contrary To Law."**

The October 9, 2015 Complaint alleges that Plaintiff was "denied the disability retirement pay and benefits to which he is and has been entitled under 10 U.S.C. § 1204[.]"  Compl. ¶ 43.  After considering the new evidence on remand, the May 3, 2018 AFBCMR Reconsideration Decision ruled that "the Medical Advisor found it plausible that [Plaintiff's] participation in vigorous training for his fitness assessment may have contributed to the occurrence of his stroke[.]"  ECF No. 40 at 43.  Therefore, the only remaining issue is whether Plaintiff met the retirement criteria set forth in 10 U.S.C. § 1204.

That Section provides, in relevant part:

> Upon a determination by the Secretary concerned that a member of the armed forces . . . is unfit to perform the duties of his office, grade, rank, or rating because of physical disability, the Secretary may retire the member with retired pay . . . , if the Secretary also determines[, *inter alia*,] that . . . the disability . . . is a result of an injury, illness, or disease incurred or aggravated in line of duty after September 23, 1996 . . . *while performing active duty or inactive-duty training*[.]

10 U.S.C. § 1204(2)(B)(i) (2000) (italics added).

The term "active duty" means "full-time duty in the active military service of the United States."  10 U.S.C. 101(d)(1) (2000).  The October 9, 2015 Complaint does not allege that Plaintiff was in an "active duty" status at the time of the alleged injury.  Compl. ¶ 44 (Plaintiff "suffered a [stroke] . . . that rendered him physically disabled, and that [stroke] was incurred while performing the task of running as he was ordered to do as part of the SFIP *inactive-duty training*.") (italics added).

6

Section 101 of Title 10 of the United States Code defines "inactive-duty training" as:

(A) duty prescribed for Reserves by the Secretary concerned under section 206 of title 37[4] or any other provision of law; and

(B) special additional duties authorized for Reserves by an authority designated by the Secretary concerned and performed by them on a voluntary basis in connection with the prescribed training or maintenance activities of the units to which they are assigned.

10 U.S.C. § 101(d)(7) (2000).

The Secretary of the Air Force, however, requires that, "[a]ll ['inactive-duty training'] must . . . [h]ave advance authorization from the [service] member's unit commander (or designated representative) for unit personnel. For Individual Reservists[,] the authorizing authority is the supervisor or program manager ([t]his is done in Block III of the AF Form 40A)." AFMAN 36-8001 ¶ 4.2.1.1 (Jan. 22, 2004). In addition, "[a]ll ['inactive-duty training'] must . . . [b]e performed for pay and points, or points only as an USAFR member without pay from another [United States] government source (i.e. no dual compensation)." AFMAN 36-8001 ¶ 4.2.1.3 (Jan. 22, 2004).

In this case, the Administrative Record evidenced that Plaintiff failed to establish that he was in an "inactive-duty training" status while performing SFIP. First, Plaintiff did not produce a completed AF Form 40A to demonstrate that he was authorized by his Commander to perform "inactive-duty training." Such authorization is a pre-condition for any activity, including SFIP, to be considered performed by a service member in an "inactive-duty training" status. *See* AFMAN 36-8001 ¶ 4.2.1.1 (Jan. 22, 2004); *see also United States v. Hale*, 77 M.J. 598, 604 (A.F. Ct. Crim. App. 2018) (determining that "no authority existed to extend a reserve member's military status while on inactive-duty training beyond the designated block of time listed on the AF Form 40A"). Second, Plaintiff did not produce evidence that he performed SFIP for pay and points, or points only. As a matter of law, all "inactive-duty training" must be performed for pay and points, or points only. *See* AFMAN 36-8001 ¶ 4.2.1.3 (Jan. 22, 2004); *see also* 31 U.S.C. § 1342 ("An officer or employee of the United States Government . . . may not accept voluntary services for [the G]overnment or employ personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property. . . . As used in this section, the term 'emergencies involving the safety of human life or the protection of property' does not include ongoing, regular functions of government the suspension of which would not imminently threaten the safety of human life or the protection of property.").

SFIP is not a "special additional dut[y]" authorized by the Secretary of the Air Force as a type of "inactive-duty training." *See* 10 U.S.C. § 101(d)(7)(B). The Secretary of the Air Force has determined that there are only five types of "inactive-duty training:" (1) Training Period: "[a] 4-hour period of training, duty, or instruction[;]" (2) Unit Training Assembly: "[a] planned period

---

[4] The duties prescribed for Reserves by the Secretary of the Air Force in Section 206 of Title 37 are: (1) "a regular period of instruction[;]" (2) "the performance of such other equivalent training, instruction, duty, or appropriate duties, as the Secretary [of the Air Force] may prescribe;" and (3) "a regular period of instruction that the member is scheduled to perform but is unable to perform[,] because of physical disability[.]" 37 U.S.C. § 206 (2000).

of training, duty, instruction, or test alert completed by a Reserve unit[;]" (3) Equivalent Training: "[a] training period accomplished in place of a scheduled [Unit Training Assembly] or [Training Period;]" (4) Additional Ground Training Period: "[a] flying training period authorized for an individual in an authorized flying position[;]" and (5) Readiness Management Periods: training periods "used to support the ongoing day-to-day operation of the unit accomplishing unit administration, training preparation, support activities, and maintenance functions." AFMAN 36-8001 ¶¶ 4.1.1 to 4.1.5 (Jan. 22, 2004).  Each of these types of "inactive-duty training" are performed "in connection with the prescribed training or maintenance activities of the units to which they are assigned." 10 U.S.C. § 101(d)(7)(B); *see also Clark v. United States*, 93 Fed. Cl. 756, 773 n.40 (Fed. Cl. 2010) ("like all inactive-duty training, [Equivalent Training] is a formal, supervised period of training") (internal corrections omitted).  *Cf. United States v. Wolpert*, 75 M.J. 777, 781 (A. Ct. Crim. App. 2016) (determining that a service member was not in an "inactive-duty training" status after signing out from a period of Unit Training Assembly).

Instead, SFIP is "[a] remedial intervention program *recommended* for traditional Reservists . . . identified with a composite poor fit score." U.S. AIR FORCE, AIR FORCE INSTRUCTION 10-248 (May 26, 2004) ("AFI 10-248") at 46 (italics added). Reservists "are *highly encouraged* to take part [in SFIP] on a *voluntary basis* in all available intervention programs" so that they can meet the minimum fitness requirements of the Air Force. *See* AFI 10-248 at 46 ("All [service] members of the Air Force must be physically fit to support the Air Force mission."); *see also id.* ("The [Air Force] uses a composite fitness score based on aerobic fitness, muscular strength[,] and body composition to determine overall fitness. Overall fitness is directly related to health risk, including risk of disease (morbidity) and death (mortality). A composite score of 70 represents the minimum accepted health, fitness[,] and readiness levels."). As the May 3, 2018 AFBCMR Reconsideration Decision explains, "SFIP training is no different than any other daily routine to maintain fitness between drilling [Unit Training Assemblies]." ECF No. 40 at 43.

Therefore, as a matter of law, a service member is not in an "inactive-duty training" status while performing SFIP.  This is so, because Congress requires that all service members who perform "inactive-duty training" are in a "*duty status*." 10 U.S.C. § 101(d)(7) (italics added) (defining "inactive-duty training" as a type of "duty status"). The Secretary of the Air Force also stated that all service members who perform SFIP "are in a *non-duty status*, [and] their participation . . . is not mandated." AFI 10-248 at 46 (italics added). Accordingly, the May 3, 2018 AFBCMR Reconsideration Decision correctly ruled that, "[c]ontinued adherence to any fitness routine while in civilian[, non-duty] status is highly encouraged, but cannot be and is not mandated." ECF No. 40 at 43.

Accordingly, the May 3, 2018 AFBCMR Reconsideration Decision's determination that Plaintiff was neither "lawfully ordered to participate in SFIP while in civilian[, non-duty] status, nor . . . in an ['inactive-duty training'] status when he did so participate" is not arbitrary, capricious, unsupported by substantial evidence, nor contrary to law.

8

## IV. CONCLUSION.

For these reasons, the Government's May 8, 2017 Motion For Judgment On The Administrative Record is granted and Plaintiff's June 8, 2017 Cross-Motion For Judgment On The Administrative Record is denied. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

<u>s/ Susan G. Braden</u>
**SUSAN G. BRADEN**
**Senior Judge**