# In the United States Court of Federal Claims

No. 15-1163C
Filed: September 11, 2020
FOR PUBLICATION

| | |
|---|---|
| **MALCOLM PIPES,**<br><br>*Plaintiff,*<br><br>v.<br><br>**UNITED STATES,**<br><br>*Defendant.* | Keywords: Military Pay; Disability Retirement; Inactive-Duty Training; 10 U.S.C. § 101(d)(7); Uniform Code of Military Justice; Self-Paced Fitness Improvement Program; Motion for Judgment on the Administrative Record; RCFC 52.1. |

*Cheri L. Cannon*, Tully Rinckey PLLC, Washington, D.C., for the plaintiff.

*Reta E. Bezak*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Hank D. Nguyen*, Air Force Legal Operations Agency, of counsel, for the defendant.

## MEMORANDUM OPINION

***HERTLING*, Judge**

The plaintiff, Malcolm Pipes, seeks review of the decision by the Air Force Board for Correction of Military Records ("AFBCMR" or "the Board"), on remand from the Court of Appeals for the Federal Circuit, denying him disability-retirement pay and benefits. The Board found that the plaintiff was not in inactive-duty training ("IDT") status at the time of his injury and thus was not injured in the line of duty, as required by the relevant statute to receive disability-retirement pay and benefits. The parties cross-move for judgment on the administrative record.

Although the Federal Circuit's opinion does not expressly answer the question of whether the plaintiff was in IDT status at the time of his injury, the Board's conclusion that he was not is inconsistent with the Federal Circuit's decision. Accordingly, the Board's conclusion denying the plaintiff benefits on that basis is vacated as arbitrary and capricious. That determination does not end the inquiry. The issue remains whether the plaintiff was required to satisfy the administrative prerequisites to be on IDT. Because the Board did not address whether the requirements of the Air Force Manual apply to the plaintiff, the matter must be remanded for further consideration. Accordingly, the Court defers a final determination on the cross-motions for judgment on the administrative record.

I.      **BACKGROUND**

A.      **Facts**

The Court relies on the decision by the Federal Circuit for a recitation of the facts:

> Pipes enlisted in the United States Air Force ("USAF") in 1983.  He served on active duty for seven years and in the United States Air Force Reserve for nine years.  In 2004, while Pipes was in the Reserve, the Air Force established stringent physical fitness standards, which subjected Reserve members to an annual scored fitness assessment.  All members of the Air Force were notified that they must be physically fit to support the Air Force mission.  . . . Members who failed to satisfy physical fitness requirements would be subject to discharge.  On October 1, 2004, Pipes was informed by his Flight Commander that members who score at the marginal or poor fitness levels would be entered into the Self-paced Fitness Improvement Program ("SFIP").   On November 7, 2004, Pipes failed his fitness assessment which was conducted during a scheduled Unit Training Assembly ("UTA").  UTA is prescribed by the Secretary of the Air Force as a form of [IDT.] . . . During that UTA, Pipes was formally enrolled in the SFIP and was given a written order from his Commander to "exercise at least five times per week," performing the exercises specified by the SFIP, which included pushups, crunches, and a 1.5 mile run.

> Shortly before that first fitness assessment, Pipes began receiving elevated blood pressure readings.   Though Pipes continued his engagement in the SFIP, he informed his Commander that he was having blood pressure issues and trouble with the running portion of the SFIP.   Pipes' Squadron Commander expressed concern about Pipes' high blood pressure and was concerned a vigorous fitness program could lead to injury, stroke, and heart attack.  However, in August 2005, Pipes failed a second fitness assessment and was once again given orders to exercise five days per week to address his repeat fitness assessment failures.

> On January 6, 2006, due to his continuously elevated blood pressure readings, Pipes reported high blood pressure as a concern on his annual USAF physical screening.  On February 5, 2006, Pipes was evaluated by Dr. Granger, a USAF medical doctor.   Pipes produced medical records to Dr. Granger from his civilian physician showing elevated blood pressure as well as a USAF form completed by his civilian physician stating her concerns regarding Pipes' continued participation in the SFIP.   Dr. Granger's evaluation demonstrated that Pipes had elevated blood pressure, which ranged

2

between 151/94 when sitting to 146/99 when standing.  Further, Dr. Granger rendered a diagnosis of hypertension and obesity.  Unlike Pipes' civilian physician, Dr. Granger did not relay this health information to Pipes and instead communicated to him the need for healthy living and for additional exercise.   According to Pipes' Commander, the standing policy of his wing unit was to bar any member observed with untreated hypertension from exercise in a SFIP.   Under the existing command, the medical squadron was ordered to advise the Commander of any member who should so be barred.  In Pipes' case, his Commander concluded that the medical squadron failed to follow the standing orders.  As a result, Pipes was not excused from the SFIP he had been ordered to perform.

After being cleared for continued participation in the SFIP by Dr. Granger, Pipes participated in a third fitness assessment that same day.  However, Pipes became ill during the run portion and was unable to complete the assessment.  Pipes participated in additional fitness assessments on May 7, 2006 and July 10, 2006, both of which he also failed.  After the July 2006 fitness assessment, Pipes reported to Major Lara Rowlands, the unit fitness advisor, that he was running in accordance with the SFIP, but that he was not seeing any improvement and that he often felt ill after running. Nevertheless, the medical squadron again failed to remove Pipes from the SFIP.

On September 3, 2006, Pipes became ill while running in accordance with the SFIP and experienced "a headache, difficulty breathing, dizziness, an impression of being overheated, and a general feeling of malaise." . . . These symptoms continued into the night, requiring Pipes to go to the hospital around 2:00 AM on September 4, 2006.  Pipes was diagnosed with a Cerebrovascular Accident, i.e., a stroke.

On September 6, 2006, Pipes contacted his unit concerning the stroke.  On December 5, 2006, without performing a Line of Duty ("LOD") determination, the USAF informed Pipes that "he was not eligible to receive disability benefits, because his stroke did not occur during inactive duty training." . . .

On November 26, 2007, Pipes was determined by the USAF to be medically disqualified for continued military duty.  However, in lieu of an administrative discharge, the USAF informed Pipes that he was eligible for retirement.  On January 30, 2008, Pipes applied for transfer to the Retired Reserves in lieu of administrative discharge for physical disqualification.  On September 15, 2008, Pipes was assigned to the Retired Reserves, and the assignment was

backdated, effective September 4, 2006. In October 2008, Pipes was informed that his retirement from the USAF was approved. However, Pipes, who was forty-seven years old at the time, would not be able to obtain the approved retirement benefits until he was sixty years old.

On or about October 15, 2010, Pipes obtained a copy of his USAF medical records. Upon review of these records, Pipes learned for the first time that during his February 4, 2006 medical clearance exam, the USAF Medical Examiner observed that his blood pressure was abnormally high, rendered a diagnosis of untreated hypertension, but nonetheless cleared him for continued participation in the SFIP and his fitness assessments.

On August 10, 2011, Pipes filed an Application For Correction Of Military Record with the [AFBCMR] requesting a LOD determination for disability retirement instead of his already-approved regular retirement. On June 4, 2012, the USAF Office of the Assistant Secretary for Military and Reserve Affairs issued a Memorandum for the AFBCMR recommending denial of the change in records to reflect Pipes was permanently medically retired. On July 5, 2012, Pipes responded to the June 4, 2012 Memorandum by providing supplemental documentation to the AFBCMR. On February 28, 2013, the AFBCMR denied Pipes' Application for Correction of Military Records, finding that he was not entitled to disability retirement based on a determination that he did not demonstrate the existence of a material error or injustice. On April 30, 2013, and again on July 3, 2013, Pipes requested reconsideration by the AFBCMR to remedy the decision denying him the ability to be permanently and medically retired as of 2007. On August 11, 2014, the USAF Office of the Assistant Secretary affirmed the AFBCMR's denial.

*Pipes v. United States*, 791 F. App'x 910, 911-13 (Fed. Cir. 2019) (citations omitted). These facts are not in dispute.

### B.   Procedural History

Following the Board's denial of disability-retirement pay and benefits, the plaintiff filed a complaint in this court in October 2015. He alleged that he was on IDT at the time of his stroke and thus entitled to a disability retirement under 10 U.S.C. § 1204. The court remanded the case in September 2017 to the Board for reconsideration. On remand, an Air Force medical advisor concluded that it was "plausible that [the plaintiff's] participation in vigorous training for his Fitness Assessment, during the 12-hour cycle of time between his alleged running activity and onset of stroke symptoms, contributed to the occurrence of a stroke on or about [September 4, 2006]." (ECF 57, Administrative Record ("AR") at 13-14.) The Board determined that the

plaintiff's participation in SFIP could have contributed to his stroke but denied relief because the SFIP was not undertaken in the line of duty. (*Id.* at 17.) This court then held that the Board's conclusion was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law and granted judgment on the administrative record to the defendant. *Pipes v. United States*, 139 Fed. Cl. 538 (2018).

The Federal Circuit reversed. *Pipes*, 791 F. App'x 910. The Court of Appeals opened its decision with a broad statement of the issue before it: "whether Pipes' disability resulted from an injury incurred or aggravated *while performing inactive-duty training*." *Id.* at 915 (emphasis in original). Instead of resolving this broad question, however, its decision was expressly limited "to a determination that Pipes was ordered to engage in the SFIP when in duty status." *Id.* at 916. Because the plaintiff was in duty status when he was enrolled in the SFIP, he was subject to the Uniform Code of Military Justice ("UCMJ"). *Id.* While in a duty status and subject to the UCMJ, the plaintiff "was ordered, in writing, by his Commander to enroll in a personalized SFIP requiring him to exercise at least five times per week." *Id.* Based on its determination that the plaintiff was in a duty status and subject to the UCMJ, the Court of Appeals held that the plaintiff was "lawfully ordered to perform the SFIP designed for him." *Id.* The Court of Appeals remanded the case to this court with instructions to remand the case to the Board for further assessment consistent with its opinion. *Id.* Following the remand from the Court of Appeals, the case was reassigned to this judge. (ECF 51.) The Court then remanded the case to the Board for reconsideration. (ECF 52.)

The Board again denied relief to the plaintiff on May 14, 2020. (AR at 2.) It agreed with the Federal Circuit that the plaintiff had received a lawful order from his commander while in duty status but found that "his stroke occurred during a non-duty, civilian status." (*Id.* at 8.) The Board based its decision on the exhibits, the Air Force Reserve Command Supplement provisions on the SFIP, and the statutory definition of "inactive-duty training." (*Id.*) The Board found that "participation in the SFIP does not warrant automatic IDT status, even if ordered during [*sic*] while in a duty status." (*Id.*) It further found "no evidence . . . that [the plaintiff] requested or [the plaintiff's] commander ever attempted to place him in an authorized IDT status between UTAs to exercise." (*Id.* at 9.) The Board therefore found that the plaintiff did not warrant an "In Line of Duty" determination and subsequent disability-retirement processing. (*Id.*)

The plaintiff challenged the Board's latest decision and moved for judgment on the administrative record. (ECF 61.) The defendant cross-moved for judgment on the administrative record (ECF 64), and the plaintiff responded. (ECF 65.) The Court held oral argument on August 24, 2020.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Tucker Act, 28 U.S.C. § 1491, has been interpreted to limit this Court's jurisdiction over statutory and regulatory claims, even in the military pay context, to causes of action based on money-mandating statutes and regulations. *Metz v. United States*, 466 F.3d 991, 995-98 (Fed. Cir. 2006). A statute is money-mandating when it is "reasonably amenable to the reading that it mandates a right of recovery in damages." *United States v. White Mountain Apache Tribe*, 537

U.S. 465, 473 (2003). The statute governing military retirement for disability, 10 U.S.C. § 1201, is a money-mandating statute. *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005).

In a motion for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims, the Court's review is limited to the administrative record, and the Court makes findings of fact as if it were conducting a trial on a paper record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). The Court must determine whether a party has met its burden of proof based on the evidence contained within the administrative record. *Id.* at 1355. Genuine issues of material fact will not foreclose judgment on the administrative record. *Id.* at 1356. The Court must uphold the decision of the AFBCMR "unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010).

The Court cannot substitute its judgment for that of the military departments, even if "reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). Although the scope of review is narrow, the Court determines "whether [the agency] examined 'the relevant data' and articulated 'a satisfactory explanation' for [its] decision, 'including a rational connection between the facts found and the choice made.'" *Sharpe v. United States*, 935 F.3d 1352, 1358 (Fed. Cir. 2019) (alterations in original) (quoting *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2569 (2019)).

## III.    DISCUSSION

In order to qualify for disability retirement, a military member's disability must be "a result of an injury, illness, or disease incurred or aggravated in the line of duty . . . while performing active duty or inactive-duty training." 10 U.S.C. § 1204(2)(B)(i). Active-duty status is not at issue here. The parties agree that the only issue remaining is whether the plaintiff was on "inactive-duty training" while participating in the SFIP between UTAs.

The plaintiff also argues that the Board failed to consider all his submissions, including the recording of the oral argument from his appeal to the Federal Circuit.

### A.    Federal Circuit Decision

#### 1.    Scope of the Holding

The parties dispute the scope of the Federal Circuit's holding in the plaintiff's appeal. The Federal Circuit found "the only issue in dispute" to be "whether Pipes' disability resulted from an injury incurred or aggravated *while performing inactive-duty training*." *Pipes*, 791 F. App'x at 915 (emphasis in original). The Court of Appeals declined to answer this broad question. It instead held more narrowly:

> [T]hat, to the extent their analysis turned on Pipes' duty status at the time of his orders, both the AFBCMR and the Claims Court erred in concluding that Pipes was not lawfully ordered to perform the SFIP designed for him. The consequence of that error is the absence of any consideration of Pipes' request for disability retirement in the

> light of the fact that he was ordered to perform exercises that caused his stroke and hence his retirement. Thus, the argument that Pipes was in a non-duty status when ordered to perform his SFIP is no longer a valid rationale for denying his disability retirement. Our holding is limited to a determination that Pipes was ordered to engage in the SFIP when in a duty status.

*Id.* at 916.

The plaintiff argues that the Court of Appeals held that he was in IDT status while he was participating in the SFIP. The Court of Appeals, however, limited its holding with express language in the following phrases: "*to the extent* their analysis turned on Pipes' duty status at the time of his orders" and "*limited to* a determination that Pipes was ordered to engage in the SFIP when in a duty status." *Id.* (emphasis added). It held only that the plaintiff had received a legal order from his commander while in a duty status; the Federal Circuit did not decide whether the plaintiff's disability resulted from an injury incurred or aggravated while performing IDT. That issue was left to the Board on remand.

## 2.      Enforceable Order

The plaintiff argues that the Federal Circuit held both that he was in IDT status while participating in the SFIP between UTAs, and that the order to participate in his SFIP was enforceable between UTAs. Because the order was lawful, the plaintiff argues, it placed him in IDT status. The Board's determination to the contrary, the plaintiff asserts, is undermined by the circularity of its reasoning. According to the plaintiff, the only action the Board, and now this Court, had to undertake was to give effect to the Federal Circuit's determination by granting the plaintiff the relief he seeks.

The AFBCMR agreed with the Federal Circuit, as it had to, that the plaintiff was given a lawful order to participate in the SFIP. It found nonetheless that "the order, even though lawful, was not enforceable when the member was in civilian status." (AR at 6.) The order was thus a lawful—yet legally unenforceable—order. This conclusion is inconsistent with the Federal Circuit's holding.

The Federal Circuit determined that the plaintiff's SFIP went beyond the SFIP-related provisions of the relevant Air Force Instruction ("AFI"). AFI 10-248, in effect at the time of the plaintiff's stroke, defined SFIP as follows:

> A remedial intervention program *recommended* for traditional Reservists . . . identified with a composite poor fit score. Since they are in a non-duty status, their participation in the FIP is *not mandated*. Members are *highly encouraged* to take part on a *voluntary basis* in all available intervention programs to include an individualized fitness prescription, heart rate-monitored exercise, supervised unit/fitness center physical training, and documented exercise participation to assist in administrative recommendation for

7

those remaining poor fit > 12 months (3 consecutive scores less than 70).

AFI 10-248 (AFRC Sup1_I, May 2004) at 46 (emphasis added).  The AFI's definition characterizes a SFIP as unenforceable in a non-duty status through phrasing such as "recommended," "not mandated," "highly encouraged," and "voluntary basis."  Despite this language, the Federal Circuit found the plaintiff's SFIP unique:

> At the time of Pipes' stroke, the AFI made clear that Reservists could participate in SFIP "on or off duty." AFI 10-248 (AFRC Sup1_I, May 2004) at 84. But in this case, for reasons not explained by the Air Force, the apparently *sui generis* SFIP designed for Pipes to perform when in civilian status went beyond recommendation and encouragement, being mandated by lawful orders issued during times when Pipes was in inactive duty status.

*Pipes*, 791 F. App'x at 916 n.4.  The AFI's provisions therefore do not control the conclusion here according to the Federal Circuit.  The plaintiff's *sui generis* SFIP went beyond the AFI's definition and, implicit in the Federal Circuit's ruling, was enforceable between UTAs.

The AFBCMR acknowledged the Federal Circuit's decision but still found the order unenforceable under the UCMJ.  The AFBCMR determined that the plaintiff was not subject to the provisions of the UCMJ when he was performing his SFIP because he was not in status.  It found that "adherence to orders issued while in military status is not legally enforceable when in civilian status[,] and violation of a commander's order while in civilian status is not punishable under the UCMJ" because there is no jurisdiction.  (AR at 6.)

Article 2 of the UCMJ establishes its subject-matter jurisdiction over reserve members.  Article 2 of the UCMJ requires, in relevant part, a reservist to be in IDT status if the UCMJ is to be applicable.  UCMJ Art. 2(a)(3)(A)-(B), 10 U.S.C. § 802(a)(3)(A)-(B).  The Air Force's position begs the question of whether the plaintiff was in IDT status.  UCMJ jurisdiction depends on military status, but the issue here is whether the plaintiff was in military status at the time of his injury.  Finding that the UCMJ does not apply assumes that the plaintiff was not in IDT status.  Neither the Air Force nor the Board can use this circular logic to find the SFIP order unenforceable.[1]

---

[1] Article 92 of the UCMJ provides court-martial enforcement for violating or failing to obey a lawful order:

> Any person subject to this chapter who—(1) violates or fails to obey any lawful general order or regulation; (2) having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or (3) is derelict in the

The AFBCMR's finding that the lawful order was legally unenforceable is inconsistent with the Federal Circuit's holding, and the finding that there was no UCMJ jurisdiction is circular. The Board must provide a satisfactory explanation for its decision, including a rational connection between the facts and the decision made. *See Sharpe*, 935 F.3d at 1358. The circular reasoning used to find the SFIP order unenforceable is not a satisfactory explanation. Accordingly, the Board's conclusion is arbitrary and capricious and cannot stand.

The Federal Circuit determined the plaintiff to have been lawfully ordered to perform the SFIP. A lawful military order must contain within itself the ability of the relevant branch of the armed forces to enforce that order. *See United States v. Roach*, 26 M.J. 859, 864 (C.G.C.M.R. 1988) (holding that an order was not a lawful order because it had no adequate connection to a military duty justifying its enforcement); *see also United States v. Deisher*, 61 M.J. 313, 317 (C.A.A.F. 2005) ("The essential attributes of a lawful order include: (1) issuance by competent authority—a person authorized by applicable law to give such an order; (2) communication of words that express a specific mandate to do or not do a specific act; and (3) relationship of the mandate to a military duty."). While the defendant is correct that the Federal Circuit's holding did not explicitly resolve the issue, the plaintiff is correct that the logic employed by the Federal Circuit compels the finding that the Board erred in its conclusion.

The Court does not understand the Air Force's construct of an unenforceable yet lawful order.[2] The Court accepts the Board's finding that the plaintiff's commander could not have sanctioned the plaintiff for failing to undertake the SFIP between UTAs when the plaintiff was not in an IDT status. The Board has not adequately explained, however, why the lawful order to perform the SFIP would not have been enforceable under the UCMJ when the plaintiff appeared for a UTA after failing to follow the order. Indeed, the Court posits whether the Air Force would not be creating larger problems for itself by establishing a category of lawful yet unenforceable orders. *See United States v. Stewart*, 33 M.J. 519, 520 (A.F.C.M.R. 1991) ("Obedience to lawful orders is the keystone to an effective and disciplined military organization."). Officers might well be surprised to learn such a category of unenforceable, lawful orders exists.

---

performance of his duties; shall be punished as a court-martial may direct.

10 U.S.C. § 892. This provision also raises the same question of whether the plaintiff was in IDT status and thereby subject to the UCMJ.

[2] A lawful order to undertake something that is itself voluntary, as the SFIP purports to be, appears to be a concept at odds with itself, even beyond the issue of the plaintiff's status. The Federal Circuit's opinion resolves this inconsistency in this case. *See Pipes*, 791 F. App'x at 916 n.4.

Because the logic of the Federal Circuit's decision compels the result, the Court finds the Board's decision inconsistent with the Federal Circuit's decision and vacates the Board's holding.

**B.     Inactive-Duty Training**

**1.     "Voluntary"**

A finding that the SFIP order to the plaintiff was lawful and enforceable does not end the inquiry.  The Board found that the plaintiff, despite being under a lawful order to participate in a SFIP, was not in IDT status at the time of his injury.

"Inactive-duty training" is defined by statute as:

> (A) duty prescribed for Reserves by the Secretary concerned under section 206 of title 37 or any other provision of law; and

> (B) special additional duties authorized for Reserves by an authority designated by the Secretary concerned and performed by them on a voluntary basis in connection with the prescribed training or maintenance activities of the units to which they are assigned.

10 U.S.C. § 101(d)(7)(A) & (B).

The Air Force Manual ("AFMAN") implements these statutory definitions for the Air Force by establishing the regulatory and procedural requirements for IDT status.  AFMAN 36-8001, *Reserve Personnel Participation and Training Procedures* (Jan. 22, 2004).  The AFMAN specifies that an airman going into IDT status must initiate and complete specific paperwork to qualify for such status.  There is no dispute, as the AFBCMR found, that the plaintiff failed to undertake the required procedural steps to place himself into IDT status.

The parties do dispute whether the IDT prerequisites of the AFMAN apply to the plaintiff.  The dispute focuses on the use of the word "voluntary" in subparagraph (B) of the IDT statute and the AFMAN's application of the statute.

The AFMAN explicitly requires IDT to be performed for pay or points.[3]  *See id.* ¶ 4.2.1.3.  The plaintiff argues that the provisions of the AFMAN do not apply to IDT performed pursuant to subparagraph (B) of the statute.  Subparagraph (A) of the statute, he argues, refers to IDT for pay, and subparagraph (B) refers to IDT without pay.  Specifically, the plaintiff interprets the word "voluntary" in subparagraph (B) to mean "without pay."  Because the plaintiff did not receive pay or points for participation in the SFIP, he argues that subparagraph

---

[3] "Points are a unit of measurement of tracking a [reserve] member's participation.  They are also used to calculate the amount of participation for retirement purposes."  AFMAN 36-8001, ¶ 2.1.

(B) applies, and that the AFMAN's procedural requirements do not apply. The defendant interprets the word "voluntary" in subparagraph (B) of the statute to refer to "free will" and argues that the requirements of the AFMAN apply to all IDT. The Board did not address this issue, given it found the order was not enforceable.[4]

A court "normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020). A word is presumed to bear the same meaning throughout the same legal text. *See Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."); *accord Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 319-20 (2014) (invoking the presumption of consistent usage but noting that it may yield to context). When a court decides whether the language is "plain," it "must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

Both the plaintiff's and the defendant's suggested definitions of "voluntary" are semantically acceptable. *Black's Law Dictionary* defines "voluntary" to mean, among other things, "[u]nconstrained by interference; not impelled by outside influence" and "[w]ithout valuable consideration or legal obligation." *Voluntary*, *Black's Law Dictionary* (11th ed. 2019).

The context, however, appears to support the defendant's interpretation. The plaintiff's definition appears to be inconsistent with many other instances of the use of the word "voluntary" throughout Title 10 of the U.S. Code. *See, e.g.*, 10 U.S.C. § 509 (voluntary extension of enlistments); § 638b (incentive for voluntary retirement); § 802 (voluntary enlistment); § 831 (voluntary statements); § 1175a (payment of voluntary separation pay). The defendant's interpretation appears to be consistent with the way Congress employed "voluntary" in these other provisions of Title 10. A high-level review of Title 10 does not reveal any substantial usage of the plaintiff's conception of "voluntary" to mean "without pay."[5]

The language in the original enactment of the statute also appears to support the defendant's interpretation of "voluntary." The definition of "inactive-duty training" was first

---

[4] Because the AFBCMR did not address the issue at all, and this Court's role is to review decisions made by the AFBCMR in the first instance, the Court must remand the case. As a result, the following discussion of the issue is, strictly speaking, *dicta*. The Court includes the discussion in order to give the plaintiff an opportunity to address before the AFBCMR in the first instance the issues identified by the Court.

[5] The exceptions to the defendant's proposed meaning of "voluntary" appear to exist only when Title 10 references non-military voluntary services. *See, e.g.*, 10 U.S.C. § 343 (services of voluntary and uncompensated advisers); § 1501a (voluntary services to facilitate accounting for missing persons); § 1588 (providing for civilian voluntary services); § 2113 (voluntary services of guest scholars and other persons).

enacted in the Armed Forces Reserve Act of 1952.  Pub. L. No. 82-476, 66 Stat. 481, 481 (1952).
The original definition included language similar to that of the current subparagraph (B).  *See id.*
("'Inactive-duty training' . . . includes the performance of special additional duties, as may be
authorized by competent authority, by such members on a voluntary basis in connection with the
prescribed training or maintenance activities of the unit to which the members are assigned.").
Although the word "voluntary" is used in the Act only in this one instance, the Act includes other
variations of the word "voluntary," such as "involuntary," "voluntarily," and "involuntarily."
Each appears to refer to free will.  *See, e.g., id.* at 483 ("ordered to active duty involuntarily");
486 ("involuntarily reduced in his permanent rank, grade, or rating"); 489 ("involuntarily
recalled for duty"); 491 ("ordered to active duty voluntarily"); 496 ("involuntary release from
active duty").

        The plaintiff argues that subparagraph (B) must refer to IDT without pay in order to give
subparagraph (B) of the current statute any meaning.  All duties described by the AFMAN, the
plaintiff argues, necessarily fall under subparagraph (A).  The plaintiff argues that the
defendant's claim that IDT must be performed for pay or points effectively writes the word
"voluntary" in subparagraph (B) out of the statute.  The defendant's interpretation, however,
does appear to provide meaning to subparagraph (B), independent of subparagraph (A).
Subparagraph (A) cross-references section 206 of Title 37, which provides for IDT
compensation.   There is no indication, aside from the plaintiff's reading of "voluntary," that
subparagraph (B) refers to IDT without compensation.  Another section of Title 10 explicitly
provides for reserve duty without pay.  *See* 10 U.S.C. § 12315 ("Subject to other provisions of
this title, any Reserve may be ordered to active duty or other duty . . . with his consent, without
pay.").  Subparagraph (B) of the IDT definition does not use such explicit language.
Subparagraph (B) also provides for additional IDT, not included in subparagraph (A).
Specifically, it provides IDT for "maintenance activities of the units," which is not referenced in
section 206 of Title 37.  10 U.S.C. § 101(d)(7)(B); *see* 37 U.S.C. § 206.  "Maintenance
functions" are listed under the readiness-management-period category in the AFMAN's list of
five types of IDT.  AFMAN 36-8001 ¶ 4.1.5.  It appears that subparagraph (B), even if it
includes IDT for pay, has substantive effect and is not surplusage independent of subparagraph
(A).

        2.      **Air Force Manual**

        If the AFMAN implements both subparagraphs of the statutory definition of "inactive-
duty training," it is unlikely that the plaintiff would prevail.  The AFMAN enumerates only five
types of IDT:  training, UTA, equivalent training, additional ground training, and readiness
management.  AFMAN 36-8001 ¶¶ 4.1.1-4.1.5.  The AFMAN requires that all IDT "be
performed for pay and points, or points only," and "be approved in advance, in writing, by the
member's supervisor with an information copy to the appropriate assigned Program Manager, in
advance of performing any IDT period."  *Id.* ¶¶ 4.2.1.2-4.2.1.3.  The plaintiff did not participate
in the SFIP for pay or points and was not approved in advance in writing for IDT, and the
required paperwork, which the AFMAN required the plaintiff to initiate, was not completed.

        To certify all types of IDT, except Professional Military Education, reservists are
instructed to use AF Form 40A.  *Id.* ¶ 4.12.1.  The individual reservist has the onus to complete

and submit AF Form 40A. *See id.* ¶¶ 4.12.3-4.12.6. Advance authorization for IDT is provided by the supervisor or program manager "in Block III of the AF Form 40A." *Id.* ¶ 4.2.1.1. The AFMAN provides that the individual reservist "will complete an AF Form 40A and send the original," *id.* ¶ 4.12.3, "must complete and send the AF Form 40A within 30 days after completing the IDT," *id.* ¶ 4.12.3.3, and "must send copy 3 to their [*sic*] supervisor." *Id.* ¶ 4.12.3.5. The plaintiff did not complete or submit AF Form 40A for his participation in the SFIP.

The parties dispute whether IDT may be performed for periods of less than two hours. Paid IDT has a minimum four-hour requirement, and points-only IDT has a two-hour minimum. *Id.* ¶ 4.9. The AFMAN does appear to contemplate IDT of less than two hours, but only to be accumulated for a pay or point four-hour standard. It provides that "[t]he program manager may designate activities for which the member may accumulate time spent (over 1 or more days) until reaching the 4-hour standard for one point." *Id.* ¶ 4.9.1. The plaintiff's participation in his SFIP included periods of exercise for less than two hours. The Court does not reach the ultimate issue of whether IDT may be performed for periods of less than two hours. Regardless of whether IDT may be performed for less than two hours, the plaintiff would not satisfy the other requirements to be in IDT status in the AFMAN, if its provisions apply to him.

Considering the context of the word "voluntary," the plaintiff's proposed reading of the statute appears doubtful to the Court. If the plaintiff is incorrect in his proposed reading, then it is likely that the provisions of the AFMAN were applicable to the plaintiff. There is no dispute that the plaintiff did not comply with the requirements of the AFMAN to put himself in IDT status.

### C.       Remand

The Court's responsibility is limited by the standard of review. The Court may review the Board's finding but not substitute its judgment for the Board's. *Heisig*, 719 F.2d at 1156 ("[C]ourts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.").

The Board resolved the plaintiff's case based on a legal conclusion that the Court finds to be inconsistent with the Federal Circuit's decision. The Board did not consider whether the plaintiff was required to satisfy the requirements of the AFMAN to qualify for IDT status. That decision turns on the question of whether the AFMAN's provisions are applicable to IDT pursuant to subparagraph (B) of section 107(d)(7) of Title 10. The Board has the expertise and the experience to construe the statute, evaluate its applicability to the AFMAN in the first instance, and determine whether the plaintiff had to comply with the AFMAN's IDT requirements. The Court leaves in the first instance this decision to the Board.

## IV.   CONCLUSION

Because the conclusion that the SFIP order was unenforceable is arbitrary and capricious, the Court vacates the Board's decision on that issue. Because the Board did not consider

whether the AFMAN applies to subparagraph (B) of the statutory definition of "inactive-duty training," the Court remands the case to the Board so that it may consider this issue.[6]

The plaintiff's motion for judgment on the administrative record is granted in part and deferred in part, and the defendant's cross-motion for judgment on the administrative record is denied in part and deferred in part.

This case has been pending since 2015.  The plaintiff is entitled to a resolution of his claim in a prompt manner, given the length of time he has been waiting for the matter to be resolved.  The Court expects that the case will receive priority consideration by the Board due to its age and the plaintiff's physical condition.  The issue before the AFBCMR on remand is a narrow one.  The Court will remand the case to the AFBCMR for a period limited to 90 days.

The Court will issue an order in accordance with this memorandum opinion.


s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

---

[6] The Court does not now reach the plaintiff's argument that the Board failed to consider his submissions.  That argument is effectively superseded by the Court's acceptance of the argument that the Board's decision was arbitrary and capricious in concluding the SFIP order to have been unenforceable.