# In the United States Court of Federal Claims

No. 15-1163C
Filed: January 7, 2022
FOR PUBLICATION

---

**MALCOLM PIPES,**

*Plaintiff,*

**v.**

**UNITED STATES,**

*Defendant.*

---

*Allen A. Shoikhetbrod*, Tully Rinckey, PLLC, Albany, NY, for the plaintiff.

*Kristin E. Olson*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with *Maj. Marc A. Nowak*, USAF, and *Maj. Kenneth M. Hynes*, USAF, of counsel, for the defendant.

## MEMORANDUM OPINION

***HERTLING*, Judge**

      The plaintiff, Malcolm Pipes, seeks review of a decision of the Air Force Board for Correction of Military Records ("AFBCMR" or "the Board"). While in the U.S. Air Force ("USAF") Reserve, the plaintiff was injured while participating in the Air Force's Self-Paced Fitness Improvement Program ("SFIP") between scheduled Unit Training Assemblies ("UTAs"). The AFBCMR denied him disability-retirement pay and benefits, finding that he was not in inactive-duty training ("IDT") status at the time of his injury and thus was not injured in the line of duty, as required by the relevant statute to receive disability-retirement pay and benefits.

      This case has been before the Board and this court on numerous occasions. After the case returned to the court from the most recent remand to the AFBCMR, the parties filed supplemental briefs in support of their cross-motions for judgment on the administrative record under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC").

      The plaintiff argues that he was in IDT status at the time of his injury because he was lawfully ordered to exercise in the SFIP between UTAs, and that the AFBCMR erred in holding otherwise. The defendant argues that the AFBCMR decision was not arbitrary and capricious and should be upheld.

      The applicable Air Force guidance requires advance authorization for a reservist to be in IDT status. Because there is no evidence that the plaintiff was authorized for IDT, the AFBCMR

found that he was not in IDT status at the time of his injury.  The AFBCMR's findings are consistent with the law and the record and, under the applicable standard of review, must be sustained.

The defendant's motion for judgment on the administrative record is granted, and the plaintiff's motion for judgment on the administrative record is denied.

## I.   BACKGROUND

### A.   Facts[1]

Beginning in 1983, the plaintiff served in the USAF for approximately 16 years, consisting of seven years on active duty and nine in the USAF Reserve.  (ECF 1, ¶ 7.)  In 2004, while serving in the USAF Reserve, the plaintiff failed an annual fitness assessment and received a "poor" rating.  (*Id.* ¶ 13.)  As a result of that rating, the plaintiff received verbal counseling and was enrolled in the Air Force's SFIP with orders to begin running five days a week between UTAs.  (*Id.*)

On September 3, 2006, the plaintiff became ill while running in accordance with the SFIP between scheduled UTAs.  (*Id.* ¶ 19.)  In the early hours of September 4, he went to a hospital where his injury was diagnosed as a cerebrovascular accident, commonly referred to as a stroke.  (*Id.*)  Within days, the plaintiff notified the USAF of the diagnosis.  (*Id.* ¶ 21.)

In November 2007, the USAF determined the plaintiff to be "medically disqualified for continued military duty" due to his stroke.  (AR 749.[2])  He was transferred from the USAF Reserve to the Retired Reserve in 2008, with an effective retirement date of September 4, 2006.  (AR 220; *see also* AR 370.)

### B.   Procedural History

In 2011, after receiving his USAF medical records, the plaintiff filed an application for correction of his military records with the AFBCMR.  Among other things, the plaintiff requested that "[h]is Air Force Reserve medical and personnel records be corrected to reflect that he is permanently medically retired at 60 percent (or more) effective 4 September 2006."

---

[1] For a full recitation of the facts, see Chief Judge Braden's first memorandum opinion in this matter.  *Pipes v. United States* ("*Pipes I*"), 134 Fed. Cl. 380, 382-86 (2017); *see also Pipes v. United States* ("*Pipes III*"), 791 F. App'x 910, 911-13 (Fed. Cir. 2019) (providing a summary of the facts).  The facts here are only a background summary relevant to the parties' supplemental briefs in support of their cross-motions for judgment on the administrative record.

[2] Citations to the administrative record (ECF 97) are cited as "AR" with the pagination reflected in that record as filed with the court.

(AR 41.)  The AFBCMR denied relief, finding that "[i]nsufficient relevant evidence has been presented to demonstrate the existence of error or injustice."  (AR 46.)

In 2015, the plaintiff filed a complaint in this court seeking review of the Board's rejection of his request for disability retirement.  (ECF 1.)  He alleged that, because he was participating in the SFIP, he was in IDT status at the time of his stroke and thus entitled to disability retirement.  (*Id.* ¶¶ 41-44.)  The court denied the defendant's motion to dismiss and remanded the case to the AFBCMR for reconsideration due to the parties' supplemental declarations of relevant witnesses and additional medical records not before the Board when it first ruled against the plaintiff.  *Pipes I*, 134 Fed. Cl. 380.

On remand, an Air Force medical advisor concluded that it was "plausible that the [plaintiff's] participation in vigorous training for his Fitness Assessment, during the 12-hour cycle of time between his alleged running activity and onset of stroke symptoms, contributed to the occurrence of a stroke on or about [September 4, 2006]."  (AR 34-35.)  The AFBCMR nevertheless denied relief because the SFIP was not undertaken in the line of duty.  (AR 38.)  The AFBCMR found that the plaintiff "was never lawfully ordered to participate in SFIP while in civilian status nor that he was in an IDT status when he did so participate."  (*Id.*)

After the AFBCMR issued its decision, this court granted judgment on the administrative record to the defendant.  *Pipes v. United States* ("*Pipes II*"), 139 Fed. Cl. 538 (2018).  The court agreed with the AFBCMR that participation in the SFIP while in non-duty status could not be mandated.  *Id.* at 544-45.  The court concluded that the AFBCMR's determination—that the plaintiff "was never lawfully ordered to participate in SFIP while in civilian status nor that he was in an IDT status when he did so participate" (AR 38)—was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law.  *Pipes II*, 139 Fed. Cl. at 545.

On the plaintiff's appeal, the Federal Circuit reversed and held "that, to the extent their analysis turned on [the plaintiff's] duty status at the time of his orders, both the AFBCMR and the Claims Court erred in concluding that [the plaintiff] was not lawfully ordered to perform the SFIP designed for him."  *Pipes III*, 791 F. App'x at 916.  The Federal Circuit explained that "the argument that [the plaintiff] was in a non-duty status when ordered to perform his SFIP is no longer a valid rationale for denying his disability retirement."  *Id.*  Although the relevant Air Force Instruction ("AFI") "encouraged" SFIP participation, as a mandated lawful order, "the apparently *sui generis* SFIP designed for [the plaintiff] to perform when in civilian status went beyond recommendation and encouragement . . . ."  *Id.* at 916 n.4.  The Federal Circuit remanded the case to this court with instructions to remand the case to the AFBCMR for further assessment of the plaintiff's request for correction of his military records.  *Id.* at 916.

Following the remand from the Federal Circuit, the case was reassigned to the undersigned (ECF 51) and then was remanded to the AFBCMR for reconsideration in accordance with the Federal Circuit's mandate (ECF 52).

The AFBCMR again denied relief to the plaintiff in May 2020.  (AR 23.)  It agreed with the Federal Circuit that the plaintiff had received a lawful order from his commander while in duty status but nonetheless found that "his stroke occurred during a non-duty, civilian status."

(AR 29.)  The Board based its decision on the exhibits, the Air Force Reserve Command ("AFRC") Supplement provisions on the SFIP, and the statutory definition of "inactive-duty training."  (*Id.*)  The AFBCMR found that "a reservist's participation in the SFIP between UTAs does not warrant automatic IDT status, even if ordered during [*sic*] while in a duty status."  (*Id.*)  It further found "no evidence . . . that the [plaintiff] requested or the [plaintiff's] commander ever attempted to place him in an authorized IDT status between UTAs to exercise."  (AR 30.)  The AFBCMR therefore found that the plaintiff did not warrant an "In Line of Duty" determination and subsequent disability-retirement processing.  (*Id.*)

On consideration of the parties' cross-motions for judgment on the administrative record following the Board's decision, the Court found that the Air Force's argument that the SFIP order was lawful, yet unenforceable, was inconsistent with the Federal Circuit's decision.  *Pipes v. United States* ("*Pipes IV*"), 150 Fed. Cl. 76, 82-84 (2020).  Although the Court rejected the Board's decision, the plaintiff was not awarded the relief he sought.  Because it had rejected the plaintiff's claim on another ground, the AFBCMR had not considered whether the relevant provision of the Air Force Manual ("AFMAN") governing IDT status, AFMAN 36-8001, *Reserve Personnel Participation and Training Procedures* (Jan. 22, 2004), applied to both subparagraphs of the statutory definition of IDT.[3]  *Id.* at 86-87.  If the AFMAN applied only to the first subparagraph of the statute and if the plaintiff could show that his service was authorized under the second subparagraph, then the plaintiff would not need to meet the AFMAN's administrative prerequisites for IDT status.  The Court remanded the case to the AFBCMR so that it could consider the issue in the first instance.[4]  *Id.*

In December 2020, the AFBCMR again denied the plaintiff relief.  (AR 12.)  It found that the AFMAN's provisions governing IDT do apply to both subparagraphs of the statutory definition of IDT.  (AR 21.)  Because service "members must have the commander's (or designee) authorization in advance to perform an IDT, paid or unpaid," the plaintiff cannot establish that he was in IDT status while participating in the SFIP.  (*Id.*)  Despite the lawful order for the plaintiff to participate in the SFIP between UTAs, the AFBCMR found "no documented evidence of advance IDT authorization by the commander (or designee) for exercising."  (*Id.*)  The commander's order to participate in the SFIP, the AFBCMR found, "does not automatically authorize IDT, paid or unpaid," regardless of whether an AF Form 40A is required for IDT

---

[3] "Inactive-duty training" is statutorily defined as "(A) duty prescribed for Reserves by the Secretary concerned under section 206 of title 37 or any other provision of law; and (B) special additional duties authorized for Reserves by an authority designated by the Secretary concerned and performed by them on a voluntary basis in connection with the prescribed training or maintenance activities of the units to which they are assigned."  10 U.S.C. § 101(d)(7)(A) & (B).

[4] In *Pipes II*, Judge Braden applied the AFMAN's provisions governing IDT to the plaintiff but did not address the issue of whether they should not apply to the plaintiff, as the plaintiff argued in *Pipes IV* and argues now.  *See Pipes II*, 139 Fed. Cl. at 543-44.

status.  (*Id.*)  Without evidence of the commander's authorization, the AFBCMR declined to correct the plaintiff's records and award him disability retirement.  (*Id.*)

After the AFBCMR issued its December 2020 decision, the plaintiff filed a supplemental brief in support of his motion for judgment on the administrative record.  (ECF 79.)  With his supplemental brief, he attached a report written by retired Air Force Colonel Larry D. Younger. Col. Youngner's report purportedly supported the plaintiff's position that he was in IDT status when performing the SFIP between UTAs.  The report, however, had not been submitted to the AFBCMR, so it had not considered the report.  The Court held a status conference at which the plaintiff was informed that because Col. Youngner's report was not part of the administrative record, it could not be considered in support of the plaintiff's motion for judgment.  Thereafter, on the plaintiff's unopposed motion for remand, the Court remanded the case to the AFBCMR for the limited purpose of allowing the plaintiff to submit Col. Youngner's report to the AFBCMR for consideration.  (ECF 82.)

In the AFBCMR's most recent decision in August 2021, it again denied the plaintiff relief.  (AR 1.)  The AFBCMR reviewed all submitted exhibits, Col. Youngner's report, the plaintiff's rebuttal to various Air Force advisory opinions received by the Board regarding Col. Youngner's report, and a supplemental report prepared by Col. Youngner.  (AR 8.)  The AFBCMR's determination, however, did not change.  (AR 8-11.)

Following the AFBCMR's December 2020 and August 2021 decisions, the parties have filed supplemental briefs in support of their cross-motions for judgment on the administrative record.  (ECF 100 & 104.)  The Court heard oral argument on December 9, 2021.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Tucker Act, 28 U.S.C. § 1491(a)(1), authorizes this court to exercise jurisdiction over claims against the United States based on money-mandating statutes and regulations.  *Metz v. United States*, 466 F.3d 991, 995-98 (Fed. Cir. 2006).  A statute is money-mandating when it is "reasonably amenable to the reading that it mandates a right of recovery in damages."  *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003).  The statute governing military retirement for disability, 10 U.S.C. § 1201, is a money-mandating statute.  *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005).

As a claim for military-retirement pay, the plaintiff's claim falls within the court's jurisdiction.  *Pipes I*, 134 Fed. Cl. at 388, 393-95 (finding jurisdiction over the plaintiff's claim and denying the defendant's motion to dismiss).

The parties have cross-moved for judgment on the administrative record under RCFC 52.1.  In consideration of such motions, the court's review is limited to the administrative record, and the court makes findings of fact as if it were conducting a trial on a paper record.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005); *see also Young v. United States*, 497 F. App'x 53, 58-59 (Fed. Cir. 2012) (per curiam) (applying the standard of review articulated in *Bannum* to a motion for judgment on the administrative record involving review of a decision of the AFBCMR), *cert. denied*, 569 U.S. 964 (2013).  The court must determine

whether a party has met its burden of proof based on the evidence contained within the administrative record. *Bannum*, 404 F.3d at 1355. Genuine issues of material fact will not foreclose judgment on the administrative record. *Id.* at 1356.

The court must uphold a "decision of the AFBCMR unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010). The court cannot substitute its judgment for that of the military departments, even if "reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). Although the scope of review is narrow, the court must determine "whether [the agency] examined 'the relevant data' and articulated 'a satisfactory explanation' for [its] decision, 'including a rational connection between the facts found and the choice made.'" *Sharpe v. United States*, 935 F.3d 1352, 1358 (Fed. Cir. 2019) (alterations in original) (quoting *Dep't of Comm. v. New York*, 139 S. Ct. 2551, 2569 (2019)).

## III.   DISCUSSION[5]

To qualify for disability retirement, a military member's disability must, in relevant part, be "a result of an injury, illness, or disease incurred or aggravated in the line of duty . . . while performing active duty or inactive-duty training." 10 U.S.C. § 1204(2)(B)(i). The plaintiff was not in active-duty status at the time of his injury. The only other option under the law by which he can qualify for disability retirement is IDT status. The issue before the Board and this Court is whether the plaintiff was in IDT status at the time of his stroke. If the plaintiff was not in IDT status when performing his SFIP at the time of his stroke, he is not entitled to a disability retirement; if he was in IDT status, he is entitled to disability retirement.

The AFBCMR's December 2020 and August 2021 decisions found that the plaintiff was not in IDT status at the time of his stroke. The plaintiff argues that those decisions were arbitrary, capricious, and an abuse of discretion. The defendant argues that the AFBCMR's decisions are supported by the law and evidence and are not arbitrary or capricious and not an abuse of discretion. The parties dispute whether the lawful order to participate in the SFIP between UTAs placed the plaintiff in IDT status while he exercised pursuant to that order.

### A.   IDT Status

Title 10 of the U.S. Code defines "inactive-duty training" in two subparagraphs, providing that IDT refers to both:

> (A) duty prescribed for Reserves by the Secretary concerned under
> section 206 of title 37 or any other provision of law; and

---

[5] The Court reviews both the AFBCMR's December 2020 decision (AR 12-22) on remand after *Pipes IV* and its August 2021 decision (AR 1-11) responding to Col. Youngner's report.

(B) special additional duties authorized for Reserves by an authority designated by the Secretary concerned and performed by them on a voluntary basis in connection with the prescribed training or maintenance activities of the units to which they are assigned.

10 U.S.C. § 101(d)(7)(A) & (B).

In *Pipes IV*, the Court did not decide whether the plaintiff had been in IDT status at the time of his stroke because an issue remained for the AFBCMR to consider.[6]  The AFBCMR had found that the plaintiff was not authorized for IDT and never considered whether the relevant provisions of the AFMAN applied to the IDT claimed by the plaintiff.  *Pipes IV*, 150 Fed. Cl. at

---

[6] The plaintiff argues that the Court has already found that the plaintiff was in IDT status while participating in the SFIP.  No court has made that determination.

The Federal Circuit eliminated one basis for finding the plaintiff to have been in a non-duty status at the time of his stroke, explaining that "the argument that [the plaintiff] was in a non-duty status when ordered to perform his SFIP is no longer a valid rationale for denying his disability retirement."  *Pipes III*, 791 F. App'x at 916.  The Federal Circuit held "that, to the extent their analysis turned on [the plaintiff's] duty status at the time of his orders, both the AFBCMR and the Claims Court erred in concluding that [the plaintiff] was not lawfully ordered to perform the SFIP designed for him."  *Id.*  The Federal Circuit specifically noted that the plaintiff was "in civilian status" while performing his SFIP.  *Id.* at 916 n.4.  The Court will not treat that reference by the Federal Circuit as a specific holding on the issue but notes that this reference appears to undercut the plaintiff's assertion that the question of the plaintiff's status in IDT has been resolved already in his favor.

When the case came back to this Court from the AFBCMR after remand following the Federal Circuit's decision, the Court vacated the AFBCMR's decision, finding it inconsistent with the Federal Circuit's holding: "Although the Federal Circuit's opinion does not expressly answer the question of whether the plaintiff was in IDT status at the time of his injury, the Board's conclusion that he was not is inconsistent with the Federal Circuit's decision."  *Pipes IV*, 150 Fed. Cl. at 78.  The plaintiff relies on that sentence from the introduction of the Court's 2020 memorandum opinion to buttress his argument that the issue of the plaintiff's status has already been resolved.  That sentence, however, was not intended to imply that the Federal Circuit's opinion required a finding that the plaintiff was in IDT status at the time of his stroke.  Rather, as the Court went on to explain in its opinion, the AFBCMR's decision was inconsistent with the Federal Circuit's decision for a different reason.  *Id.* at 82-84.  The Air Force Evaluation, on which the AFBCMR relied, had argued that the lawful order to participate in the SFIP between UTAs was unenforceable.  *Id.* at 82.  The Court found that position to be inconsistent with the Federal Circuit's holding—a lawful order must be enforceable.  *Id.* at 83.  That determination also does not reflect a judicial finding that the plaintiff was in IDT status at the time he suffered his stroke.  The question of whether the plaintiff was in IDT status at the time of his injury remains undecided and is the focus of this decision.

86-87.  The Court again remanded the case for the AFBCMR to consider whether the provisions of the AFMAN governing IDT applied to both subparagraphs of the statutory definition of IDT, 10 U.S.C. § 101(d)(7).  *Id.*

### 1.      Air Force Manual

Chapter four of AFMAN 36-8001 establishes administrative prerequisites for IDT status. The AFMAN provides that all IDT must "[b]e performed for pay and points, or points only . . . ."[7]  AFMAN 36-8001, ¶ 4.2.1.3.  All IDT must "be approved in advance, in writing, by the [service] member's supervisor with an information copy to the appropriate assigned Program Manager, in advance of performing any IDT period."  *Id.* ¶ 4.2.1.2.  "The authorizing official for IDT is the commander of the assigned unit, the [individual Mobilization Augmentee] program manager, supervisor, or a representative designated in writing."  *Id.* ¶ 4.4.  Although the AFMAN prohibits paid IDT periods of less than four hours or points-only IDT periods of less than two hours, the program manager could "designate activities for which the member may accumulate time spent (over 1 or more days) until reaching the 4-hour standard for one point." *Id.* ¶¶ 4.9-4.9.1.  The AF Form 40A is the designated form to certify all types of IDT, except certain training not relevant here.  *Id.* ¶ 4.12.1.

### a.      Scope

The plaintiff argues that he was in IDT status for no pay and no points while exercising for the SFIP between UTAs.  (ECF 100 at 9 (citing AR 3098).)  Capt. Pipes averred in July 2021 that "[t]he 917th Wing Commander expressly stated in a mass briefing that pay and points were not authorized, because the time period required to complete the exercise fell below the threshold period of both 2 and 4 hours."  (AR 3098.)  Because the AFMAN provides that IDT must be for pay and points or for points only, AFMAN 36-8001, ¶ 4.2.1.3, the plaintiff argues that the AFMAN's provisions apply only to the first half of the statutory definition of IDT, 10 U.S.C. § 101(d)(7)(A), which cross-references a statute providing for IDT compensation.

According to the plaintiff, the IDT authorized by § 101(d)(7)(B) and 10 U.S.C. § 12315 falls outside the AFMAN's scope.  He argues that these statutes provide for IDT even when the reservist is not receiving pay or points or both.  (ECF 100 at 12-13.)  First, the second half of the statutory definition of IDT, § 101(d)(7)(B), provides that IDT includes "special additional duties authorized for Reserves by an authority designated by the Secretary concerned and performed by them on a voluntary basis in connection with the prescribed training or maintenance activities of the units to which they are assigned."  10 U.S.C. § 101(d)(7)(B).  The plaintiff reads the word "voluntary" in this portion of the statute to mean without pay.  Second, 10 U.S.C. § 12315

---

[7] "Points are a unit of measurement of tracking a [reserve] member's participation.  They are also used to calculate the amount of participation for retirement purposes."  AFMAN 36-8001, ¶ 2.1.

provides explicitly for reserve duty "with . . . consent, without pay." *Id.* § 12315(a)(2). The plaintiff reads these provisions to authorize IDT without pay or points or both.

The plaintiff argues that pursuant to these statutory provisions he need not meet the AFMAN's requirements governing IDT because the *sui generis* order from his commander to him to participate in the SFIP placed him in IDT status pursuant to those statutory provisions, which are outside the scope of the AFMAN's IDT provisions covering IDT for pay or points. According to the plaintiff, because IDT is available when the reservist is not receiving pay or points or both, the AFMAN's IDT-status administrative prerequisites, which expressly require IDT for pay or points, do not apply to this form of IDT he was in when he was accruing no pay and no points. In sum, the plaintiff reads the AFMAN's provisions governing IDT to apply only to 10 U.S.C. § 101(d)(7)(A), the first subparagraph of the statutory definition of IDT.

Although the Court left the issue for the AFBCMR to consider in the first instance, in its 2020 memorandum opinion the Court conducted its own interpretative analysis without making a final determination on the issue. *Pipes IV*, 150 Fed. Cl. at 84-86. The Air Force's position on remand is consistent with the Court's analysis of the statutory text. The AFBCMR reviewed and agreed with the Air Force Evaluation, which interpreted the word "voluntary" in § 101(d)(7)(B) to refer to an exercise of free will, not to IDT without pay.[8] (AR 21; *see also* AR 2593-94.) Accordingly, in its December 2020 decision, the AFBCMR found that "the AFMAN 36-8001 administrative requirements apply to both 10 U.S.C. [§] 101(d)(7), subparagraphs (A) and (B)." (AR 21.)

The Air Force Evaluation also found that "[t]he AFMAN implements 10 U.S.C. [§] 101(d)(7) by providing the procedures for scheduling and authorizing IDTs and the method for ensuring the proper accounting for each IDT." (AR 2594.) The Air Force found that, even if § 101(d)(7)(B) were meant to apply to IDT without pay, the AFMAN would still apply because 10 U.S.C. § 12315 explicitly provides that "[d]uty without pay shall be considered for all purposes as if it were duty with pay." 10 U.S.C. § 12315(a). (AR 2594-95.) The AFBCMR agreed with the Air Force's conclusions on the scope of the AFMAN. (AR 21.)

The plaintiff has not demonstrated that the AFBCMR's interpretation is contrary to law. The AFBCMR's interpretation harmonizes the IDT statutes with the AFMAN. The Court finds the AFBCMR's conclusions regarding the scope of the AFMAN's coverage on IDT to be consistent with the relevant statutes.

---

[8] Each time the AFBCMR considers a request for correction of military records, an Air Force Judge Advocate submits an advisory memorandum to the Board. When the AFBCMR summarizes the memorandum, it refers to it as the Air Force Evaluation. In this opinion, the Court will refer to the AFRC Judge Advocate memoranda as "Air Force Evaluations."

b.      **Authorization**

AFMAN 36-8001 is the designated publication governing "Reserve Personnel Participation and Training Procedures" issued "by order of the Secretary of the Air Force." (AR 2467 (formatting modified).)  The Secretary requires that all IDT "be approved in advance, in writing, by the [service] member's supervisor with an information copy to the appropriate assigned Program Manager, in advance of performing any IDT period."  AFMAN 36-8001, ¶ 4.2.1.2.

Having concluded that the AFMAN's provisions governing IDT status applied, the AFBCMR rested its decision that the plaintiff was not in IDT status on the AFMAN's authorization requirement for IDT.  "Although the commander issued the [plaintiff] a lawful order to perform the SFIP between UTAs, after a review of the entire case file, to include the [plaintiff's] rebuttal," the AFBCMR found, "no documented evidence of advance IDT authorization by the commander (or designee) for exercising."  (AR 21.)  The AFBCMR found that the plaintiff "failed to provide evidence that reflects his commander . . . authorized a no pay/no point IDT status in order to perform the ordered exercise regime."  (*Id.*)  Without evidence of advance authorization, the AFBCMR recommended against correcting the plaintiff's records.  (*Id.*)

The plaintiff raises several objections concerning the AF Form 40A and a supplement to an AFI.  The AFBCMR, however, did not rely on either in making its determination—this case is all about advance authorization.

The AFMAN requires reservists to use AF Form 40A to certify all types of IDT, other than exceptions not relevant here.  AFMAN 36-8001, ¶ 4.12.1.  The plaintiff argues that an AF Form 40A is not required for placement in IDT status.  (ECF 100 at 8-9, 14-15.)  The May 2021 Air Force Evaluation agreed that "the Form 40A is the tool used to memorialize the order and duty performed, but it is the commander or the commander's representative, not the form, that authorizes the IDT."  (AR 2845.)  The AFBCMR's December 2020 decision noted that the record contained no completed AF Forms 40A for any of the relevant SFIP periods.  (AR 21.)  The AFBCMR, however, found that, even if an AF Form 40A was not required for placement in IDT, "the case turns on whether the [plaintiff] had prior commander authorization to be in a no pay/no points IDT status."  (*Id.*)  Because the lack of the AF Form 40A was not determinative for the Board's decision, the plaintiff's argument based on the absence of the AF Form 40A does not undercut the AFBCMR's rejection of the plaintiff's claim.

The plaintiff also objects to the AFBCMR's interpretation of AFRC Supplement 1 to AFI 10-248.  The AFBCMR found that the AFRC's Supplement prohibited cumulative AF Form 40As.[9]  (ECF 100 at 10-12.)  The May 2021 Air Force Evaluation opined that the plaintiff's

---

[9] For specifically designated activities, reserve members may accumulate time spent in the activity, even over multiple days, until reaching the four-hour standard for one point.  AFMAN 36-8001, ¶ 4.9.1.

command could not have approved a cumulative AF Form 40A, in part, because two paragraphs of Supplement 1 prohibited it. (AR 2845-46.) The AFBCMR found that only one of those provisions applied to traditional reservists like the plaintiff; namely, paragraph 6.4.7 applied. (AR 10.) Paragraph 6.4.7 provides, "'Members will not be placed on orders for the sole purpose of participation in the [Healthy Living Workshop/Fitness Improvement Program].'" (*Id.* (quoting AFRC Supplement 1, AFI 10-248, ¶ 6.4.7).) The AFBCMR noted, however, that "one could interpret that the two paragraphs do not apply in the [plaintiff's] case, as he was a traditional reservist." (*Id.*) Apparently recognizing some uncertainty over the applicability of the AFRC Supplement to the AFI, the AFBCMR did not rest its decision on this AFRC Supplement. It found that "even if one would find the two paragraphs did not apply to a traditional reservist, . . . a prior authorization for all IDTs is necessary." (*Id.*) Accordingly, the plaintiff's refutation of the putative application of the AFRC Supplement to his case does not undercut the Board's rejection of his claim.

In its August 2021 decision, the AFBCMR agreed with Col. Youngner that it has "the authority to correct an administrative error of the wing regarding the AF Form 40s to award the [plaintiff] IDT points." (AR 10.) The AFBCMR's finding that cumulative AF Form 40As were prohibited was not dispositive in determining that the plaintiff was not in IDT status at the time of his injury, but the AFBCMR did rely on the prohibition to respond to Col. Youngner's objection regarding the AFBCMR's authority. Because it found that cumulative AF Form 40As were prohibited, the Board found that there was no administrative error to correct. (*Id.*) Although the plaintiff argues that those findings are arbitrary and capricious (ECF 100 at 14-15), this issue goes to the hypothetical relief available had the AFBCMR found the plaintiff to have been in IDT status at the time of his injury. The AFBCMR discussed the issue solely to respond to the plaintiff's submission of Col. Youngner's report, and that discussion does not undercut the AFBCMR's decision regarding the plaintiff's duty status.

As previously noted, the Board determined that the AF Form 40A is not required for authorization of IDT. (AR 2845.) The plaintiff agrees. (ECF 100 at 8-9.) As a result, each of the plaintiff's objections regarding the AF Form 40A is ultimately not relevant to the threshold question of whether the plaintiff had advance authorization for IDT status, and the AFBCMR did not deny relief on the basis that the plaintiff had not completed an AF Form 40A.

To show advance authorization, the plaintiff can point only to the order to participate in the SFIP. The plaintiff argues that the *sui generis* lawful order to participate in the SFIP between UTAs authorized IDT for no pay and no points. (ECF 100 at 12-14.) The plaintiff has not pointed to any source of law establishing an IDT status implicitly authorized in this way, and the plaintiff's counsel admitted at oral argument that this situation was not necessarily contemplated by the relevant statutes and regulations. (*See* Oral Arg. at 1:27:25 to 1:27:35.)

Considering other similar orders given to reserve members for compliance between UTAs, the Court finds that accepting the plaintiff's argument would run counter to typical Air Force operations performed by reservists. The May 2021 Air Force Evaluation notes that "[r]eservists are ordered to update medical records, to retrieve and provide records to their command, complete medical readiness requirements, finish on-line training, certify licensing status, complete required military professional education, complete [Air Force Specialty Code]

11

qualification requirements, etc. and often by a certain date as ordered by their commander." (AR 2845.)  These duties extend beyond the scheduled duty periods but do not place reservists in an IDT status.  (*Id.*)  While the plaintiff's order was *sui generis* for the normally "encouraged" SFIP, orders requiring reservists to perform other duties between UTAs do not appear to be unique.  To rule for the plaintiff could have broad implications for other types of inter-UTA orders given to reservists.

Without pointing to any law supporting its position or undermining the AFBCMR's, the plaintiff has failed to show that the AFBCMR acted improperly.[10]  The Court is bound by a deferential standard of review, under which the AFBCMR's decision must be upheld "unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."[11]  *Barnick*, 591 F.3d at 1377.  The AFBCMR correctly pointed out that there is no evidence in the record that the plaintiff had advance authorization for IDT status, as required by the AFMAN.  The AFBCMR's reasoning is consistent with the record and the law, including the previous opinions in this case of the Federal Circuit and this court.

## 2.     Colonel Youngner's Report

To rebut the AFBCMR's December 2020 decision, the plaintiff filed with his supplemental brief in this court a report written by Col. Youngner.  (ECF 79-1.)  The report was written after the December 2020 decision, so it was not part of the administrative record.  The Court granted the plaintiff's unopposed motion for remand to the AFBCMR so that it could review and consider Col. Youngner's report.  (ECF 82.)  The AFBCMR conducted a further review of all exhibits, Col. Youngner's report, the plaintiff's rebuttal to the advisory opinions received by the Board, and Col. Youngner's supplemental report, but the AFBCMR "remain[ed] unconvinced the evidence presented demonstrates error or injustice."  (AR 8.)

---

[10] The plaintiff also alleges that the defendant has acted in bad faith, but he has not presented any evidence supporting such a claim.  (*See* ECF 100 at 5, 14-15.)

[11] In arguing that the AFBCMR is not entitled to *Chevron* deference in this case, the plaintiff appears to conflate *Chevron* deference with the standard of review applied to decisions of military-records corrections boards in this court.  (*See* ECF 100 at 4-6 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).)  The defendant relies not on *Chevron* deference but on the deferential standard of review applied by this court to decisions of military-records corrections boards.  (ECF 104 at 9 ("While this case certainly involves interpretation of statutes and regulations administered by the military, and deference is therefore due the agency's interpretation, the standard of review applied by this Court to military pay cases goes beyond statutory interpretation and extends to application of law to facts and factual determinations.").)  The plaintiff has provided no valid basis for deviating from that standard.  *See Sharpe*, 935 F.3d at 1358-59 (discussing the standard of review applied to decisions of military-records corrections boards); *see also Heisig*, 719 F.2d at 1156.

On remand, the AFBCMR responded to each of Col. Youngner's objections to the Board's December 2020 decision.  (AR 8-10.)  In responding to Col. Youngner's report, the AFBCMR again found that the AFMAN's administrative prerequisites for IDT status applied to the plaintiff, that the lawful order to participate in the SFIP between UTAs did not automatically place the plaintiff in IDT status, and that "prior authorization for all IDTs is necessary."  (AR 9-10.)

The Court has already determined that the AFBCMR's conclusions in both its December 2020 and August 2021 decisions regarding the applicability of the AFMAN and the lack of authorization are consistent with the record and the law, and that the issues concerning the AF Form 40A are not relevant to those conclusions.  *Supra*, III.A.1.

Aside from the duty-status issue, Col. Youngner also argued that the AFBCMR "never fully addressed that the 917th Wing Reserve Medical Units neglected to enforce medical screening standards and neglected to complete [line-of-duty] requirements after receiving information of Capt Pipes' stroke in September 2006."  (ECF 79-1 at 30.)  To respond to this objection, the AFBCMR sought an advisory opinion from the Surgeon General of the AFRC.  The Board's request for the advisory opinion resulted in the defendant moving to extend the remand.  (ECF 87.)  In opposition, the plaintiff argued that the advisory opinion was for an "ancillary issue"; the advisory opinion "has no bearing on whether Plaintiff's disability retirement should be approved . . . ."  (ECF 90 at 2.)  The Court granted the extension because the AFBCMR had determined that it needed the additional advisory opinion to respond to Col. Youngner's report, as required by the remand order.  (ECF 93.)

In his supplemental brief, the plaintiff again argues that the medical-advisory opinion exceeded the scope of the Court's remand order.  (ECF 100 at 20.)  He requests that the opinion either be stricken from the record or given no weight.  (*Id.*)  The defendant now concedes that the question of whether medical squadron personnel met standards of care is an ancillary issue.  (ECF 104 at 14.)

The AFBCMR explained that the medical-advisory opinion was necessary to address Col. Youngner's objection to the medical care afforded to the plaintiff, and "the Court order specifically asked the AFBCMR to consider the applicant-provided report."  (AR 9.)  Although the AFBCMR noted that all three medical-advisory opinions in this case have recommended denying the plaintiff's request, the medical-advisory opinion does not appear to be the reason relief has been denied to the plaintiff by the Board.  (*See id.*)  Reiterated throughout the decision, the reason for denying relief was the lack of advance authorization for IDT.  (AR 9-10.)

The Court finds that, although the AFBCMR followed the Court's remand order, the issue addressed by the Surgeon General's advisory opinion is ancillary, as both parties agree.

The AFBCMR's conclusions on this issue have no bearing on whether the plaintiff qualifies for disability retirement.[12]

### B.      Judicial Estoppel

Judicial estoppel "'prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). The Federal Circuit has explained the three factors informing a court's judicial-estoppel determination:

> The determination of whether a party's inconsistent legal positions constitute judicial estoppel is informed by three factors, which the Supreme Court did not intend to be exclusive: (1) whether the "party's later position [is] 'clearly inconsistent' with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Trustees in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010) (modifications in original) (quoting *New Hampshire*, 532 U.S. at 750-51 (quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982))).

The plaintiff argues that the "[d]efendant should be estopped from continuing its approach of judicial whack-a-mole . . . ." (ECF 100 at 17.) According to the plaintiff, the "[d]efendant is clearly and deliberately changing positions according to the exigencies of the moment and it has consistently done so over the course of the last several years of litigation." (*Id.* at 16.) Specifically, the plaintiff asserts that the AFBCMR first relied on its finding that the SFIP order was unlawful, but that it now relies on additional IDT requirements not previously raised. (*Id.* at 15-17.)

---

[12] The plaintiff argues that the most recent medical-advisory opinion contradicts the December 2017 medical-advisory opinion, "which concluded that there was medical negligence on the part of the 917th medical unit . . . ." (ECF 100 at 7 (emphasis omitted).) The December 2017 opinion, however, did not find that the military medical providers were negligent. (*See generally* AR 1970-78.) The Court declines to resolve any dispute over the medical-advisory opinions because they are ancillary to the issue presented by the plaintiff's claim.

The defendant has not taken inconsistent positions in this case.  On each remand, the AFBCMR has reconsidered the plaintiff's claim pursuant to the court's remand orders.  In its May 2018 decision, the AFBCMR ended its analysis when it determined that the plaintiff could not be legally mandated to participate in the SFIP.  (AR 37-38.)  After the Federal Circuit rejected that basis for denying relief, the AFBCMR in its May 2020 decision determined that there was no evidence that the plaintiff had authorization for IDT status between UTAs to exercise, even as a lawful order.  (AR 29-30.)  Since the May 2020 decision, the AFBCMR has consistently asserted that position.  (*See* AR 21 (December 2020 decision), 8-10 (August 2021 decision).)  In December 2020, the AFBCMR considered on remand the applicability of the AFMAN's IDT requirements as directed by the order of this Court.  *See Pipes IV*, 150 Fed. Cl. at 86-87 (explaining the issue remaining for the AFBCMR to resolve in the first instance).

By following the remand orders in this case, the defendant has not engaged in "judicial whack-a-mole."  The Court finds no basis for judicially estopping the AFBCMR from determining that the plaintiff had to have advance authorization to be placed in IDT status.

## IV.   CONCLUSION

The AFBCMR found that the relevant provisions of the AFMAN apply to all IDT and require advance authorization for a service member to be in IDT status.  The plaintiff has not presented any evidence that he was authorized for IDT, except the order to participate in the SFIP.  Applying the AFMAN, the AFBCMR noted the lack of evidence and found that the SFIP order did not automatically place the plaintiff in IDT status while participating in the SFIP.  The AFBCMR's findings are consistent with the record and are not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

Accordingly, the defendant's motion for judgment on the administrative record is granted, and the plaintiff's motion for judgment on the administrative record is denied.

The Court will issue an order in accordance with this memorandum opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

15